IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| MINNESOTA LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MIGUEL A. CAMPOS III; N.C., A MINOR;<br><br>Defendants. | ) | Case No. 4:26-cv-00075 |

**COMPLAINT IN INTERPLEADER**

Plaintiff, Minnesota Life Insurance Company brings this Complaint in Interpleader and alleges as follows:

**NATURE OF THE ACTION**

1. As set forth below, this is an interpleader action brought pursuant to Fed. R. Civ. P. 22 to resolve competing claims to life insurance death benefits payable under group life insurance policies issued by Minnesota Life in connection with the death of Cortnee G. Campos ("Ms. Campos").

2. Ms. Campos died on July 29, 2020.

3. As a result of Ms. Campos's death, a death benefit became payable under the life insurance policies according to the policies' terms.

4. Miguel A. Campos III ("Mr. Campos"), Ms. Campos's spouse, is listed as the 80% primary beneficiary under the life insurance policies. A copy of the beneficiary designations is attached as **Exhibit A**.

5. Ms. Campos's minor daughter, N.C., is listed as a 20% primary beneficiary under the policies. (Exhibit A).

6. The circumstances of Ms. Campos's death are the subject of a criminal investigation by the Tippecanoe County Sheriff's Office. Mr. Campos has not been ruled out as a suspect in the investigation.

7. Because one of the named primary beneficiaries may be subject to disqualification under applicable law, including Indiana's slayer statute, Minnesota Life cannot safely determine the proper recipient of the death benefits without risking exposure to multiple liability.

8. Minnesota Life does not claim any beneficial interest in the death benefit proceeds, other than any right to recover its reasonable attorneys' fees, costs, and disbursements as permitted by law.

9. Minnesota Life is ready, willing, and able to deposit the disputed death benefit proceeds with the Clerk of this Court or otherwise dispose of the proceeds as the Court directs.

**PARTIES**

10. Minnesota Life is an insurance company organized under the laws of the Minnesota, with its principal place of business in St. Paul, Minnesota. It is duly licensed to do business in the State of Indiana.

11. Defendant Miguel A. Campos III is an individual and citizen of the State of Florida.

12. Defendant N.C., a minor, is a citizen of the State of Florida.

13. Ms. Campos was a citizen of Indiana at the time of her death, residing in West Lafayette, Tippecanoe County.

14. The Estate of Courtnee G. Campos is a citizen of Indiana for purposes of diversity jurisdiction.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between Minnesota Life and Defendants.

17. The amount in controversy exceeds $75,000 because the total death benefits potentially payable under the policies are $292,000.

18. This interpleader action is brought pursuant to Federal Rule of Civil Procedure 22.

19. This Court has personal jurisdiction over Defendants because the disputed annuity was issued to an Indiana resident employed by Purdue University in this District, the insured resided in this District at the time of her death, and a substantial part of the events giving rise to the competing claims occurred in this District.

20. Venue is proper in the Northern District of Indiana, Lafayette Division under 28 U.S.C. § 1391 because Ms. Campos was a citizen of Indiana, resided in West Lafayette, and a substantial part of the events and circumstances giving rise to the dispute occurred in this District.

## GENERAL ALLEGATIONS

21. Minnesota Life issued group life insurance coverage to employees of Purdue University, including Ms. Campos, under the following policies: Basic Employee Term Life (Policy No. 0033727, Unit 001, attached as **Exhibit B**) providing $62,000 in coverage; Basic Accidental Death (Policy No. 0033727, Unit 001, attached as **Exhibit C**) providing $15,000 in coverage; Additional Employee Term Life/Supplemental (Policy No. 0033759, Unit 001, attached as **Exhibit D**) providing $165,000 in coverage; and Additional Accidental Death – Employee/Voluntary AD&D (Policy No. 0033728, Unit 01E, attached as **Exhibit E**) providing $50,000 in coverage.

22. The total potential death benefits potentially payable under these policies are $292,000.

23. Ms. Campos began employment with Purdue University in 2007. Her last day of work was July 28, 2020.

24. On or about September 5, 2007, Ms. Campos designated Mr. Campos as her 80% primary beneficiary and N.C. as her 20% primary beneficiary under the policies. No contingent beneficiaries were designated.

25. In February and April of 2020, approximately five months before her death, Ms. Campos added $136,000 in basic and supplemental coverage through evidence of insurability. This coverage is within the contestable period. A copy of the additional coverage is attached as **Exhibit F**.

**<u>Ms. Campos's Death And Potential Application of Slayer Statute</u>**

26. Ms. Campos died on July 29, 2020, at her home at 4381 Lake Villa Drive, West Lafayette, Indiana. She was 34 years old.

27. Ms. Campos's death was initially reported as a suicide. However, circumstances did not align with suicide, and the Tippecanoe County Sheriff's Office opened a criminal investigation.

28. The initial death certificate lists the cause of death as "Pending Investigation" and the manner of death as unknown. A copy of the initial death certificate is attached as **Exhibit G**. Minnesota Life has never been provided with a death certificate listing the cause and manner of death.

29. Detectives with the Tippecanoe County Sheriff's Office have confirmed that Mr. Campos has not been ruled out as a subject in the death of Ms. Campos. As of June 2026, the criminal investigation is in an inactive state, but can and will be reopened if additional evidence is obtained.

30. No criminal charges have been filed as of the date of this Complaint.

31. Indiana's slayer statute, Ind. Code § 29-1-2-12.1, provides that a person who is convicted of or found by a court to have committed murder, causing suicide, or voluntary manslaughter of the decedent cannot receive property from the decedent.

32. If Mr. Campos is precluded from receiving benefits under the slayer rule, his share will be payable to N.C. under the terms of the policies.

**<u>Contestability Investigation</u>**

33. The policy provides:

> Except for fraud or the non-payment of premiums, after the insured's insurance has been in force during his or her lifetime for two years from the effective date of his or her coverage, we cannot contest the insured's coverage. However, if there has been an increase in the amount of insurance for which the insured was required to apply, then, to the extent of the increase, any loss which occurs within two years of the effective date of the increase will be contestable.

(Exhibit B at 9).

34. Ms. Campos died within two years of increasing coverage.

35. Minnesota Life has been unable to complete its review of the contestable coverage because the required documents, including a finalized death certificate with cause and manner of death, HIPAA authorizations, and health history records, have not been provided despite multiple requests.

36. Multiple request letters have been sent to Mr. Campos, N.C.'s guardian, and their counsel. No substantive response has been received since December 2022.

37. Because Minnesota Life has not been able to complete a contestability review, it is unable to determine whether the increase in coverage is effective and thus cannot determine the amount of benefits payable.

**<u>Suicide Exclusion</u>**

38. The supplemental life coverage contains the following provision regarding suicide:

> If there has been an increase in your amount of insurance for which you were required to apply or for which we required evidence of insurability, and if you die by suicide within two years of the effective date of the increase, our liability with

> respect to that increase will be limited to the premiums paid and attributable to such increase.

(Exhibit B at 9).

39. Ms. Campos died within two years of an increase in coverage.

40. Without knowing the cause of Ms. Campos's death, Minnesota Life is unable to determine whether the suicide exclusion applies.

41. Minnesota Life has been unable to complete its review because the required documents, including a finalized death certificate with cause and manner of death, has not been provided despite multiple requests.

42. Minnesota Life is thus unable to determine the amount of benefits payable.

**<u>AD&D Coverage</u>**

43. AD&D benefits are payable if a:

> death or dismemberment results, directly and independently of all other causes, from an accidental bodily injury which is unintended, unexpected, and unforeseen. The bodily injury must be evidenced by a visible contusion or wound, except in the case of accidental drowning.

(Exhibit C at 1).

44. Minnesota Life has been unable to complete its review of the AD&D claim because the required documents, including a finalized death certificate with cause and manner of death, has not been provided despite multiple requests.

45. Minnesota Life is thus unable to determine whether AD&D benefits are payable.

**<u>Interpleader Relief</u>**

46. No payments have been made to any party under the policies.

47. Minnesota Life cannot determine the proper recipient of the death benefit proceeds without resolving disputed or uncertain questions of fact and law.

48. Minnesota Life cannot pay the death benefit proceeds to any Defendant without risking multiple liability or inconsistent obligations.

49. Without the cooperation of Defendants, Minnesota Life has been unable to determine the amount of benefits payable.

50. Minnesota Life is a disinterested stakeholder and does not dispute that death benefits became payable as a result of Ms. Campos's death.

51. Once Minnesota Life has sufficient information to determine the amount of benefits payable, Minnesota Life is ready, willing, and able to pay the death benefit proceeds to the person or persons determined by this Court to be legally entitled to them.

WHEREFORE, Minnesota Life requests the Court:

(i) Permit Minnesota Life to conduct the discovery necessary to determine the amount of death benefits payable.

(ii) Appoint a guardian ad litem to represent the interests of N.C.

(iii) Permit Minnesota Life to pay to the Clerk of the Court the death benefits proceeds, including any applicable interest due and owing under the terms of the policies;

(iv) Upon receipt of the death benefit proceeds by the Clerk of the Court, and upon Minnesota Life's filing of a Motion to Dismiss, dismiss Minnesota Life with prejudice from this action, and discharge Minnesota Life from any further liability for the death benefit proceeds;

(v) Require that the Defendants litigate or settle and adjust between themselves their claims for the death benefit proceeds, or upon their failure to do so, that this Court settle and adjust their claims and determine to whom the death benefits should be paid; and

(vi) Award Minnesota Life its costs and attorney's fees incurred in this action.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: *s/ Kristina N. Holmstrom*______________
Kristina N. Holmstrom, AZ #023384
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
*Kristina.Holmstrom@ogletree.com*

Bree A. Hall, IN #38876-32
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
*Bree.Hall@ogletree.com*

Attorneys for Plaintiff Minnesota Life Insurance Company